

FILED
2021 Sep-13  AM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH WHITE,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **Case No.:** |
| **V.** | ) | |
| | ) | |
| **EBERSPACHER NORTH AMERICA,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| **DEFENDANT(S).** | ) | |

## COMPLAINT

## JURISDICTION

1.     Plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act.

2.     The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by Defendant.

3.     This suit is authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

4.     On or about November 14, 2019, the parties entered into a tolling agreement concerning This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

5.      This suit is authorized and instituted under 42 U.S.C. § 1981.

6.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory Act (Exhibit A).

7.      Plaintiff further sued within ninety (90) days after receiving the right-to-sue letter issued by the EEOC (Exhibit B).

8.      By and through their counsel, Plaintiff and Defendant entered into a tolling agreement staying the statute of limitations for White's FMLA claims on or about November 14, 2019.

## PARTIES

9.      Plaintiff, Joseph White, ("Plaintiff" or "White") is a resident of Centreville, Bibb County, Alabama, and performed work for Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Western Division.

10.     Defendant Eberspacher North America ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

11.     During White's employment, Defendant employed more than 500 employees.

12.     White worked more than 1250 hours in the calendar immediately preceding his request for FMLA.

13.     Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year before White's request for FMLA leave.

14.     Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite in the calendar year immediately preceding Plaintiff's request for FMLA leave.

## FACTS

15.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

16.     White is a person of European ancestry; the race colloquially referred to as "white."

17.     White began his employment with Defendant on or about September 13, 2013, as a Production Tech.

18.     Plaintiff had no negative performance reviews from his employment with Defendant.

19.     White had no prior history of significant disciplinary issues.

20.     Plaintiff is a person with one or more disabilities: Supraventricular Tachycardia and Mitral Valve Insufficiency.

21.     White's disabilities limit several life activities such as caring for himself and breathing, among others.

22.     White can perform the essential functions of his job with reasonable accommodations.

23.     Defendant maintains a point system to discipline employees for absences and tardiness.

24.     Absent employees without pre-approved leave are assessed two points for each day until they return to work.

25.     In January 2017, Plaintiff was absent due to a hospitalization overnight for his illness, tachycardia.

26.     Defendant charged Plaintiff two points for his health-related absence.

27.     Defendant did not offer Plaintiff FMLA leave for his health-related absence.

28.     On or about November 8, 2017, Plaintiff began experiencing symptoms of his tachycardia again.

29.     Plaintiff's condition worsened, and he was hospitalized two different times.

30.     While at the hospital the second time, Plaintiff received a doctor's note explaining that he could return to work on November 10, 2017, but that he also needed to follow up with a specialist.

31.    Defendant charged Plaintiff four points on his record for the days he was ordered to stay out of work by his doctor.

32.    On November 10, 2017, Plaintiff returned to work.

33.    On November 10, 2017, Plaintiff's supervisor, Carlos Paige, told Plaintiff that he could take off November 11, 2017, as well to continue recovering.

34.    On November 10, 2017, Plaintiff called the Plant Manager, Jeff Peoples, to advise him that he would need to take off work November 14, 2017, to attend a cardiologist appointment related to his tachycardia condition.

35.    Peoples handed the phone to Danielle Thomas, a Human Resources officer.

36.    Plaintiff explained the situation to Thomas as well.

37.    Defendant's employee, Thomas, never informed Plaintiff that he could use FMLA leave for his condition.

38.    Plaintiff learned from a co-worker that he should be eligible for FMLA leave.

39.    After learning this, Plaintiff went to Thomas and requested the FMLA paperwork.

40.    Thomas provided Plaintiff with the paperwork.

41.    On November 14, 2017, Plaintiff went to the cardiologist and took the paperwork for them to fill out.

42.     Plaintiff's doctor indicated he would return to work.

43.     Plaintiff returned to work on November 16, 2017, with the completed paperwork.

44.     Plaintiff gave the paperwork to Thomas, who noticed that the doctor had mistakenly checked the box indicating that Plaintiff was pregnant, even though he is a male.

45.     Also, the cardiologist did not account for the days that Plaintiff was in the hospital.

46.     Plaintiff asked Thomas if he could take the paperwork back to the doctor to get the errors fixed.

47.     Veola Brown, the Human Resources Manager, informed Plaintiff that he could have the paperwork corrected, and she would talk to the VP of the company about removing the points from his record.

48.     Forty-five minutes later, Brown said he could not correct the documents and would be terminated if he had accumulated 10 points on his record.

49.     Plaintiff has documentation for all of his absences from medical providers, but Defendant refused to accept the documents.

50.     Defendant terminated Plaintiff's employment on or about November 17, 2017, due to his health-related absences.

51.     Plaintiff is a person of European ancestry.

52.     Another employee, Jonathan Jackson, a person of African Ancestry, had a no call, no show but was offered and allowed to use FMLA leave for the days he was out for an illness.

53.     Jackson was neither given points nor terminated.

## COUNT I: ADA FAILURE TO ACCOMMODATE

54.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

55.     Plaintiff suffers from the physical impairments of Supraventricular Tachycardia and Mitral Valve Insufficiency.

56.     Plaintiff's Supraventricular Tachycardia, Mitral Valve Insufficiency affect him such that the major life activities of c and breathing are significantly restricted as compared to the average person in the general population.

57.     Plaintiff required the reasonable accommodation of t and recuperation.

58.     Plaintiff requested that Defendant provide a reasonable accommodation.

59.     Plaintiff performed the essential functions of his job with accommodation for his disability.

60.     Defendant failed to engage in the interactive process required by the Americans with Disabilities Act even though Plaintiff performed the essential functions of his job.

61.     Because Defendant violated the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT II: ADA DISCRIMINATION - TERMINATION

62.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

63.     White suffers from the physical impairments of Supraventricular Tachycardia, Mitral Valve Insufficiency.

64.     Defendant knew of Plaintiff's disability.

65.     White's Supraventricular Tachycardia, Mitral Valve Insufficiency affect him such that the major life activities of caring for himself and breathing are significantly restricted as compared to the average person in the general population.

66.     White performed the essential functions of his job with Supraventricular Tachycardia, Mitral Valve Insufficiency accommodation for his disability.

67.     At all times relevant to this complaint, Plaintiff performed the essential functions of his duties in a satisfactory or better manner.

68.     On November 17, 2017, Defendant terminated White's employment, citing attendance points he accumulated related to his disability as the reason.

69.     But for Plaintiff's disability, Defendant would have retained Plaintiff in his position as a Production Tech.

70.     Defendant violated the ADA by terminating his employment because of his disability.

71.     Because Defendant violated the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT IV: ADA –- RETALIATION

72.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

73.     Plaintiff was qualified for his position and able to perform the essential functions of the job.

74.     On or about November 10, 2017, Plaintiff engaged in protected activity when he requested an accommodation for his disability, time off for treatment, and recovery.

75.     On or about November 17, 2017, Veola Brown terminated Plaintiff's employment.

76.     But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as a Production Tech.

77.     Defendant violated the ADA by terminating Plaintiff for engaging in protected activity.

78.     Because Defendant violated the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT V: TITLE VII - RACE DISCHARGE

79.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

80.     White is a person of European ancestry; the race colloquially referred to as "white."

81.     White was qualified for the Production Tech position.

82.     Defendant's employee, Veola Brown, terminated Plaintiff's employment on or about November 17, 2017.

83.     Jonathan Jackson engaged in the same or similar conduct but remained employed.

84.     Jonathan Jackson is a person of African ancestry.

85.     Defendant's actions in terminating Plaintiff's employment violated Title VII.

86.     Because Defendant violated Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

87.     Defendant did not terminate Jonathan Jackson for the same or similar conduct.

88.     Defendant's race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

89.     Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

## COUNT VI: 42 U. S. C. § 1981 DISCHARGE

90.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

91.     Plaintiff is a person of European ancestry.

92.     Plaintiff was qualified for the Production Tech position.

93.     On or about November 17, 2017, Defendant terminated Plaintiff's employment.

94.     Jonathan Jackson engaged in the same or similar conduct but remained employed.

95.     Jonathan Jackson is a person of African ancestry; the race colloquially referred to as "black."

96.     Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

97.     Defendant's decision to terminate Plaintiff's employment was made, in whole or part, because of his race in violation of 42 U. S. C. § 1981.

98.     Because of Defendant's violation of 42 U. S. C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT VII:  FMLA INTERFERENCE

99.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

100.   During the 12 months before November 10, 2017, Defendant employed Plaintiff for at least 1,250 hours of service.

101.   Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's November 10, 2017, health issues related to Supraventricular Tachycardia, Mitral Valve Insufficiency.

102.   During the week of November 10, 2017, Defendant employed fifty or more employees and worked within 75 miles of Plaintiff's work location.

103.   On November 10, 2017, Plaintiff provided notice of unforeseeable FMLA leave to Danielle Thomas.

104.   Plaintiff provided notice of her unforeseeable need for FMLA leave the same day that the need for FMLA leave arose.

105.   Before November 10, 2017, Plaintiff had never informed Defendant of the need for FMLA leave.

106.   Before November 10, 2017, Defendant had never informed Plaintiff that he was eligible for FMLA leave nor provided him the appropriate paperwork.

107.   On November 10, 2017, Defendant provided Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

108.   On November 10, 2017, Defendant provided Plaintiff with an FMLA Designation Notice form.

109.   On November 10, 2017, Defendant provided Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form OR FMLA Certification of Health Care Provider for Family Member's Serious Health Condition form.

110.   When Plaintiff returned on November 16, 2017, with the completed certification, Defendant rejected the paperwork for errors and would not let Plaintiff take it back to the doctor to be corrected before it terminated his employment.

111.   Defendant interfered with Plaintiff's FMLA rights by not allowing him to complete the certification process, thus not using his benefits for leave.

112.   On November 17, 2017, Defendant terminated Plaintiff's employment without explanation.

113.   Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which he needed treatment through his doctor.

114.   Because Defendant interfered with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT VIII:  FMLA RETALIATION

115.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

116.   During the 12 months before November 10, 2017, Defendant employed Plaintiff for at least 1,250 hours of service.

117.   Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before November 10, 2017.

118.   During the week of November 10, 2017, Defendant employed fifty or more employees who worked within 75 miles of the location where Plaintiff worked.

119.   On November 10, 2017, Plaintiff provided notice of unforeseeable FMLA leave to Danielle Thomas.

120.   Plaintiff provided notice of his unforeseeable need for FMLA leave as soon as practicable due to his medical emergency.

121.   Before November 10, 2017, Plaintiff had never informed Defendant of a need for FMLA leave.

122.   Before November 10, 2017, Defendant had never informed Plaintiff that he was eligible for FMLA leave nor provided him the appropriate paperwork.

123.   On November 10, 2017, Defendant provided Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

124.   On November 10, 2017, Defendant provided Plaintiff with an FMLA Designation Notice form.

125.   On November 10, 2017, Defendant provided Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form

OR FMLA Certification of Health Care Provider for Family Member's Serious Health Condition form.

126.   When Plaintiff returned on November 16, 2017, with the completed certification, Defendant rejected the paperwork for errors and would not let Plaintiff take it back to the doctor to be corrected.

127.   Defendant interfered with Plaintiff's FMLA rights by not allowing him to complete the certification process, thus not using his benefits for leave.

128.   On November 17, 2017, Defendant terminated Plaintiff's employment without explanation.

129.   Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which he needed treatment through his doctor.

130.   Defendant's manager, Veola Brown, terminated Plaintiff's employment, in whole or part, because Plaintiff exercised FMLA rights.

131.   Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.   Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting with the Defendant and

at the Defendant's request from continuing to violate the Americans with Disabilities Act;

B.      Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

C.      Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

D.      Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

E.      Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

F.      Award him back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; and punitive damages;

G.      Attorneys' fees and costs;

H.     Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

I.      Any other or additional relief as determined by the Court to which Plaintiff is entitled.

_____
Kira Fonteneau (FON007)

**OF COUNSEL:**

Barrett & Farahany
Two 20th Street North, Suite 900
Birmingham, Alabama 35203
T: 205.564.9005 F: 205.564.9006

**PLEASE SERVE DEFENDANT AS FOLLOWS**

**Eberspacher North America**
**6801 5th Street**
**Northport, AL 35476**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

**JOSEPH WHITE,**

      **PLAINTIFF,**

**VS.**                      **CV NO.:**

**EBERSPACHER**      **NORTH**
**AMERICA,**
      **DEFENDANT.**           **JURY TRIAL DEMANDED**

# EXHIBIT A

E EOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 420-208-00590 |

_____ and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Joseph White** | **205-928-4963** | **05/05/1983** |

| Street Address | City, State and ZIP Code |
|---|---|
| **75 Ward School Road Centrevill, Alabama 35042** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Eberspacher** | **300+** | **(205) 210-4011** |

| Street Address | City, State and ZIP Code |
|---|---|
| **6801B 5th St, Northport, Alabama 35476** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address          City, State and ZIP Code

RECEIVED

NOV 27 2017

Birmingham ___ ___ Office

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)  **FMLA**

| Earliest | Latest |
|---|---|
| **11/08/2017** | **11/17/2017** |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. I am a person with on or more disabilities, Supraventricular Tachycardia and Mitral Valve Insufficiency that limit several major life activities including caring for myself.
2. I am able to perform the essential functions of my job with accommodation.
3. I am a person of European ancestry.
4. I do not have any significant disciplinary history unrelated to the issues that form the basis of this charge.
5. I have had no negative performance appraisals.
6. Eberspacher maintains a point system to discipline employees for absences and tardiness.
7. Employees who are absent without taking pre-approved leave are assessed two points for each day until they return to work.
8. In January 2017, I was absent due to a hospitalization overnight for my tachycardia.
9. I was charged two points for the absence.
10. I was never offered FMLA leave for this absence.
11. On or about November 8, 2017, I began experiencing symptoms of my tachycardia condition again.
12. As a result of those symptoms, I was unable to control my heart rate and had to go to the hospital two times.
13. When I went to the hospital the second time, I received a doctor's note that allowed me to return to work on the November 10, 2017, but I also needed to follow up with a specialist.
14. Eberspacher charged me four points for the days my doctor told me that I needed to be off to recover.
15. On November 10, 2017, I returned to work and my supervisor, Carlos Paige, told me that I could take November 11, 2017, off. I do not think that I was charged points for that day.

16. On November 10, 2017, I called Plant Manager, Jeff Peoples to advise him that I would need November 14, 2017, off to attend a cardiologist's appointment related to my tachycardia episodes. Peoples handed the phone to Danielle Thomas, in Human Resources. I told her about my cardiologist appointment.

17. I was never offered FMLA leave.

18. I talked to a coworker, who told me that I should be eligible for FMLA leave.

19. After hearing about the benefit for the first time from my co-worker, I went to Thomas and requested the paperwork.

20. Thomas provided me with the paperwork.

21. I took the paperwork to my cardiologist, who indicated on the paperwork that I could return to work on November 15, 2017.

22. I returned to work on November 16, 2017, with the paperwork in hand.

23. When Thomas looked at it she noticed that the doctor had mistakenly checked the box indicating that I was pregnant, even though I am a male, and that the cardiologist had not accounted for the days that I went to the hospital.

24. When she brought the error to my attention, I asked her if I could take the note back to the doctor and fix it.

25. Veola Brown, the Human Resources Manager also told me that I could fix the paperwork and she would talk with the VP about removing the points from my record.

26. 45 minutes later, Brown told me that I would not be able to correct the documents and I would be terminated if I had more than 10 points.

27. I have documentation of all my absences from medical providers.

28. Eberspacher refused to accept the documents and instead, on November 17, 2017, fired me.

29. Another employee, Jonathon Jackson, who is a person of African Ancestry, had a no call, no show but was offered and allowed to use FMLA for the days that he was out for an illness and was not given points or terminated.

30. I believe that I was discriminated and retaliated against because of my race, disability and for seeking an accommodation for my disability in violation of the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 11-21-17 _____ Joseph Lee White<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

RECEIVED

NOV 27 2017

Birmingham District Office

*Prepared by Fonteneau & Arnold LLC – Lawyers for Working People*

**FONTENEAU & ARNOLD LLC**
LAWYERS FOR WORKING PEOPLE

2151 Highland Avenue South, Suite 205
Birmingham, Alabama 35205
T: 205.252.1550 F: 205.502.4476
info@fonteneauarnold.com

November 22, 2017

Delner Franklin-Thomas, District Director
Equal Employment Opportunity Commission
Ridge Park Place
1130 - 22nd Street South
Birmingham, AL 35205

RECEIVED
NOV 27 2017

Re:   Charging Party: Joseph White
      Respondent:   Eberspacher

Dear Ms. Franklin-Thomas:

The above individual has retained me for representation in the charge of discrimination as set forth above. Enclosed is the Amended EEOC Charge of Discrimination for filing. All communications and correspondence should be directed to this office. A copy of all such correspondence should be directed to my client. However, if you need any information from my client, please contact this office.

Should you have any questions, please do not hesitate to contact this office.

Sincerely,

Kira Fonteneau
kira@fonteneauarnold.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

**JOSEPH WHITE,**

      **PLAINTIFF,**

**VS.**                              **CV NO.:**

**EBERSPACHER**      **NORTH
AMERICA,**
      **DEFENDANT.**                  **JURY TRIAL DEMANDED**

# EXHIBIT B

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Joseph White**
**75 Ward School Road**
**Centreville, AL 35042**

From:  **Birmingham District Office**
**Ridge Park Place**
**1130 22nd Street South**
**Birmingham, AL 35205**

☐  *On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **420-2018-00590** | **KEISHA JACKSON,**<br>**Investigator** | **(205) 651-7063** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☐  The EEOC is terminating its processing of this charge.

☒  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*/for* **BRADLEY A. ANDERSON,**
**District Director**

*(Date Issued)*

cc:  **EBERSPAECHER**
**c/o Kermit Kendrick**
**Burr & Forman, LLP**
**420 North 20th Street, Ste. 3400**
**Birmingham, AL 35203**

**Kira Fonteneau, Esq.**
**Five Points Law Group**
**2151 Highland Avenue South, Suite 205**
**Birmingham, AL 35205**

Enclosure with EEOC
Form 161-B (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS      --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE      --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"  now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.